## TEXAS CREOSOTING CO. v. SIMS.
### No. 2776.

Court of Civil Appeals of Texas. Beaumont.

Dec. 16, 1937.

Rehearing Denied Feb. 9, 1938.

228

E. L. Reid, of Orange, for appellant.

James A. Harrison, of Beaumont, Dies, Stephenson & Dies, of Orange, and Strong, Moore & Strong, of Beaumont, for appellee.

COMBS, Justice.

This suit is for brokerage commission of 6 per cent. alleged to be due the plaintiff, Frank M. Sims, on a purchase of land, timber, and minerals by defendant, Texas Creosoting Company, from the Pickering Lumber Company. Plaintiff alleged a written contract for payment of the commission, and also a verbal contract.

This is the second appeal of this case. The former trial resulted in an instructed verdict in favor of plaintiff for the sum of $7,950 on the theory of a written contract. This court reversed the judgment on the ground that plaintiff could not recover under the alleged written contract. But there were also allegations that plaintiff entered into a supplemental verbal agreement with the defendant which entitled him to the commissions. And it was held that the evidence raised an issue of fact on that issue. The cause was remanded for a new trial upon that theory. Texas Creosoting Company v. Sims, Tex.Civ.App., 50 S. W.2d 480.

The plaintiff, F. M. Sims, by written agreement, dated the 1st day of May, 1929, transferred to the Texas Creosoting Company, the defendant, an option which he held from George C. Lowell and the McCanles Building Company of Kansas City, Mo., for the purchase of the timber on 98,000 acres of land situated in the state of Louisiana, the defendant agreeing to pay the plaintiff a commission of 6 per cent. of the purchase

price not to exceed $9,000 provided the purchase should be made under the option agreement. That contract is set out in full in the opinion on the former appeal and is here referred to. The defendant did not make the purchase under the option but it was permitted to expire. It is the plaintiff's theory, and he so testified, that while he was negotiating for an extension of the option agreement, it was discovered that the Pickering Lumber Company held a lien against the property which would be subject to foreclosure in a short-time and that the defendant's purchasing agent, Thornhill, informed him that a better deal could be made by allowing the Pickering Lumber Company to acquire the property and then making the purchase from them. Sims at first demurred but was assured by Thornhill that if he (Sims) did not "muddy the water" but would allow the deal to go through in that way, he (Sims) would receive his commissions just the same. In that connection Sims testified that he and the defendant's purchasing agent, Mr. Thornhill, went to Kansas City to get an extension of the option agreement, and did obtain a short extension. That it was during such negotiations that it was discovered that Pickering Lumber Company held the lien against the property and that upon returning to the hotel in Kansas City, the verbal agreement was entered into for making the purchase from Pickering Lumber Company. He testified:

"Q. Well, after you got that extension, did you have any conversation with Mr. Thornhill in the hotel? A. Yes, sir.

"Q. Well, not just tell the jury exactly what occurred between you and Mr. Thornhill there in the hotel? A. Well, after we got back to the hotel—

"Q. That was after these papers had been signed? A. Yes, sir; and talked to Mr. Miller and all of them. Mr. Thornhill made the remark, 'Mr. Miller talked too much.' There was a lien against the property and they wanted to let it go back to Pickering Lumber Company and buy at a closer price. I told them I was not in on any trade like that. It was not right, and if they would fool around I would like to know it. I had another buyer, and he said, 'You stay out, don't muddy the water, don't fool with any other buyer, and we will figure with Pickering and you will get your commission just the same.'

"Q. And you finally agreed to that arrangement? A. Yes, sir."

Sims further testified that after the option had expired and while the defendants were negotiating with Pickering Lumber Company for the purchasing of the timber, Mr. Thornhill called him over to Orange and there asked him if he would accept $2,500 as his commission in case the deal should be consummated with Pickering and that he told Mr. Thornhill he would not accept $2,500 but would expect his whole commission. Mr. Thornhill admitted on the stand offering to pay Mr. Sims the $2,500, but denied that he ever agreed to pay a commission if the purchase was made from Pickering Lumber Company. It was shown that the defendant consummated the purchase of timber and land from the Pickering Lumber Company for $132,000.

The following issues were submitted to the jury and answered as indicated:

Special Issue No. 1: "Do you find from a preponderance of the evidence that T. C. Thornhill on or about the third day of May, 1929, in Kansas City, Missouri, orally agreed with the plaintiff, F. M. Sims, that the Texas Creosoting Company would pay him, the said F. M. Sims, a commission of six per cent on the purchase price of the land, timber and one-half of the mineral rights if the Texas Creosoting Company should purchase said property from the Pickering Lumber Company?" The jury answered, "Yes."

Special Issue No. 2: "Do you find from a preponderance of the evidence that the said T. C. Thornhill was acting as the agent of the Texas Creosoting Company at the time the oral agreement mentioned in Special Issue No. 1 was made?" The jury answered, "Yes."

Special Issue No. 3: "Do you find from a preponderance of the evidence that the said T. C. Thornhill had apparent authority from the Texas Creosoting Company to make said Oral Agreement, if such was made, whereby the Texas Creosoting Company was to pay the plaintiff the commission mentioned in Special Issue No. 1?" The jury answered, "Yes."

Special Issue No. 4: "What do you find from a preponderance of the evidence was the value, if any, of one half of the mineral rights in the land when purchased by the Texas Creosoting Company from the Pickering Lumber Company on or about the 20th day of December, 1929? A. $7,500.-00."

The evidence showed without dispute that the defendant purchased from Pickering the land, timber, and all of the minerals, whereas, Sims' contract covered the land, timber, and one-half the minerals. So, the court allowed Sims the commission of 6 per cent. on the total purchase price, less $7,500, the value of one-half the minerals, and entered judgment for $7,500.

The record is rather voluminous and it would serve no useful purpose to set out the testimony at any length. Plaintiff's testimony tended to establish the oral agreement. Defendant's testimony tended to deny it.

## Opinion.

There is no merit in the appellant's contention that the evidence did not raise the issue of a verbal contract between it and Sims whereby it agreed to pay him the 6 per cent. on the purchase. Mr. Sims testified at length about the agreement and he was in part corroborated by the defendant's purchasing agent, Thornhill. Under Sims' evidence they agreed to pay him 6 per cent. and under the defendant's evidence they agreed to pay him nothing. The issue of fact thus raised was clearly one for the jury as was held by this court on the former appeal. To the plaintiff's own testimony that it was agreed that he was to receive the commission may be added the circumstance that the defendant offered at the very time the purchase was being negotiated to allow him a commission of $2,500. If defendant did not consider itself obligated to pay him any commission, why offer to pay him the $2,500? The option which Sims had transferred to it had already expired. Viewing the record as a whole, we think the evidence abundantly supports the jury's findings.

The rule was well stated by Judge Smith, of the San Antonio Court of Civil Appeals, in Moore v. Marines, 269 S.W. 825, 826: "We are required under well-established rules to look most favorably upon the testimony tending to support the jury's findings, and under that test to uphold those findings if they appear to be founded upon material and substantial evidence; unless, indeed, the evidence to the contrary preponderates so overwhelmingly that no reasonable mind could disregard the one and give effect to the other, or reconcile the two so as to support the jury's findings." See, also, Underwood v. Security Life & Annuity Company, 108 Tex. 381, 194 S.W. 585.

In support of its contention that the plaintiff's testimony will not support the jury's findings, the appellant cites Easton v. Dudley, 78 Tex. 236, 14 S.W. 583. A reading of that case will show that the plaintiff testified in one part of his testimony that the market value of beef was $2.85 per Cwt. and in another that the market price was $2.60 per Cwt. Since the plaintiff's testimony was the only evidence offered on the point, the court merely held in substance that there was no evidence of market value. That case is no authority for the proposition that an interested party's evidence must be wholly disregarded merely because he is an interested party. The well-established Texas rule is that generally the testimony of an interested party when not corroborated does not conclusively establish a fact even when uncontradicted, but it does raise an issue of fact for the jury. Stone v. City of Wylie, Tex.Com.App., 34 S.W.2d 842; Sovereign Camp v. Jackson, Tex.Civ.App., 138 S.W. 1137.

But appellant insists that T. C. Thornhill, the purchasing agent, was without authority to purchase the land and timber in question. It offered evidence to the effect that such power rested only with its board of directors. We do not think it material whether or not Thornhill had authority to make the purchase of the land and timber. Acting as purchasing agent of his company, he made the contract with the appellant, Sims, for payment of the commission. The purchase was made and the appellant is obligated to pay the appellee the commission which its purchasing agent obligated it to pay. It cannot reap the benefits of the contract with appellee without being bound for payment of the commission which that contract imposed. Moreover, there is every indication that appellee dealt with Mr. Thornhill in the good faith belief that he had authority to make the contract for payment of the commission and if he did not have actual authority to make it, there is ample evidence to support the jury's findings that he had apparent authority. Marathon Oil Company v. Hadley, Tex.Civ.App., 107 S.W.2d 883, writ dismissed, and authority cited.

But appellant insists the plaintiff was not entitled to recover because he pleaded that under the terms of the verbal agreement sued upon, he was to be paid a commission of 6 per cent. of the purchase price of the timber, land, and one-half of the minerals, if the property was purchased

from the Pickering Lumber Company and the evidence shows that the timber, land, and all of the minerals were purchased and so there was a variance between the proof and the contract alleged. Reference to the option agreement shows that it originally covered only the timber situated on the land and then on April 15, McCanles Building Company granted a fifteen-day extension of the option in which it offered to sell the land, timber, and one-half of the minerals. The letter shows that the Pickering Lumber Company owned the other one-half of the minerals. Sims transferred all of his option agreement to the appellant and by terms of the written agreement, which is set out in the former opinion of this court, it was stipulated that appellant would pay appellee a commission of 6 per cent. of the purchase price "whether said purchase be of both said timber and land or either." In pleading the oral agreement, the plaintiff specifically pleaded, after pleading the written assignment, that it was agreed by the defendant that "he should receive his commission as hereinbefore alleged as provided in said written contract and agreement, if the defendant did not purchase said property under said option contract and extension, and should purchase said property from said Pickering Lumber Company." The evidence shows that the property covered by the agreement was purchased from the Pickering Lumber Company. And the fact that in addition a one-half mineral interest was also purchased cannot destroy the appellee's right to his commission. The value of the one-half mineral interest so purchased was found by the jury to be $7,500. That amount was deducted from the total purchase price before computing appellee's commission. So, the judgment awarded him commission only on the property covered by his contract. This case does not present a situation where another or different property than that contracted to be purchased was acquired as in Kirby Lumber Company v. West, Tex. Com.App., 236 S.W. 449, cited by appellant. Nor does it present a situation where a purchase was effected or offer procured on terms different from those specified as in Clark v. Asbury, Tex.Civ.App., 134 S.W. 286, and Witt v. Byrum, Tex.Civ.App., 135 S.W. 687.

▇ Finally appellant complains of the following argument of counsel: "The way to look at these things is to see how you would like to be treated." It is insisted that such argument was an appeal to the jury to disregard the law and the evidence and to decide the case upon the principle of how the jury would like to be treated if they were plaintiffs in the case. We discover nothing inflammatory or prejudicial in the argument complained of. There was no appeal to the jury to disregard either the law or the evidence, but only "to look at these things (presumably the things properly before them) in the way you would like to be treated." And so it was no more than a suggestion that the jury apply the golden rule looking alike to the rights of plaintiff and defendant. Such argument was not erroneous. Rio Grande, E. P. & S. F. Ry. Co. v. Dupree, Tex.Com.App., 55 S.W.2d 522.

On the whole record, we are convinced that this case has been fairly and properly tried and that all findings have ample support. On the findings the appellee is entitled to the commissions which the appellant owes him. It ought to pay him.

The judgment is affirmed.