**RUSS MITCHELL, Inc. et al. v. HOUSTON PIPE LINE CO.**

No. 12038.

Court of Civil Appeals of Texas. Galveston.

Feb. 24, 1949.

Rehearing Denied March 31, 1949.

Edward S. Boyles, M. U. S. Kjorlaug and W. J. Mills, all of Houston, for appellant.

Blades, Kennerly, Fisher & Whitworth, L. E. Frazier, Jr., and Fred W. Moore, all of Houston (W. H. Blades, of Houston, of counsel), for appellee.

CODY, Justice.

The appellee, a corporation engaged in the transportation and sale of natural gas in South Texas, brought this action for damages against appellants, alleging the failure and refusal of appellants to complete the laying and salvaging of approximately 8,851 feet of 18 inch pipe line and 22,420 feet of 16 inch pipe line according to the terms of a written contract dated August 2, 1945. Appellants answered appellee's petition by the allegation that appellee had itself cancelled the contract sued on, in conformity with an option so to do which was vested in appellee by the terms of the contract sued on, and that consequently appellee was not entitled to enforce any obligations which had ceased to exist. Then, by cross-action, appellants sued appellee for damages, alleging in that connection that appellee had caused appellant Russ Mitchell, Inc., reasonably to believe that appellee had cancelled the contract sued on by appellee. Appellants further alleged in their cross-action that appellee had failed to perform its obligations under the contract sued on, but that appellant Russ Mitchell, Inc., in addition to performing its obligations under the contract sued on up until the time that appellee cancelled same, that it performed labor for which appellee was liable to it, and which appellee had never paid, and for which said appellant sought to recover by said cross-action.

The contract sued on by appellee was in the form of a letter written by appellant Russ Mitchell, Inc., to appellee, dated August 2, 1945, and which letter was marked "accepted" by appellee in conformity with the provisions therein that such acceptance should be signified. Among the provisions .

of the contract was the requirement that appellant Russ Mitchell, Inc., should furnish appellee a performance bond. And appellant the United States Guarantee Company was surety on said performance bond, and was sued by appellee as such surety. Since said last mentioned appellant was obligated in connection with this suit only in virtue of the performance bond, hereinafter, when the term "appellant" (that is, when the plural is not used) is used, it is to be understood that Russ Mitchell, Inc., is referred to.

The terms of said written contract provided:

A. That the jobs covered thereby were located at thirty-two separate locations, as set out on attached maps, and further specified that the work to be performed by appellant was fully described in the attached specifications.

B. That appellant should furnish all labor; construction; supplies, except as otherwise expressly provided; equipment; machinery; etc.

C. That, as between the parties, appellant should be liable to appellee as an independent contractor.

"D. Should either party hereto be prevented from performance hereunder by what is usually termed 'force majeure' or be prevented in whole or in part from completing his or its obligations hereunder due to the inability to obtain the necessary materials, supplies or permits due to existing or future rules, regulations, orders, laws or proclamations of governmental authorities (both Federal and State, including both civil and military), the terms of this contract for any of the above reasons shall be suspended during the continuance of such inability so caused.

"E. Should any such inability occur so that the performance of this contract is suspended or shall cease, Houston Pipe Line Company shall have the option at that time of paying for so much of the work as has been done and canceling the contract as to the remaining work, or of holding the performance of such contract in abeyance until the inability so caused is remedied. It is understood that some of the pipe and material needed on this job which is to be supplied by Company has been ordered and should arrive before it is needed for the completion of this job, but in the event there is some delay in the delivery of such pipe and material to Company, such delay shall not affect the terms of this contract.

"F. The Houston Pipe Line Company agrees to pay Russ Mitchell, Inc., Contractor, $1.59 per lineal foot for laying, salvaging, hauling, and stringing approximately 8,851 feet of 18" pipe line and 22,420 feet of 16" pipe line in accordance with the specifications referred to above and made a part hereof.

"G. On the first of each month an appropriate determination shall be made of the work completed by Russ Mitchell, Inc., Contractor, and the Houston Pipe Line Company shall pay to Russ Mitchell, Inc., Contractor, an amount equal to 85% of the value of work completed, the value to be determined by computing the work completed at the price referred to above. The remaining 15% shall be due and payable upon satisfactory completion of this contract."

At the conclusion of all the evidence, appellants moved for an instructed verdict, which was refused. Certain special issues requested by appellants were refused, and the court submitted the case to the jury on 11 special issues which he conceived were made by the pleadings and the evidence. As answered by the jury, said issues were:

1. That appellant intended to abandon all work under the contract when it moved its equipment off the job about November 15, 1945.

2. That within a reasonable time after appellant so stopped its work, appellee notified appellant that appellee expected the work to be completed in accordance with the contract of August 2, 1945.

3. That appellee had paid appellant all money owing appellant for all work, including regular and extra work, except 99 feet of additional casing in connection with the job, which is identified in the contract as "Job 12".

4. That appellant did not perform any work for which it was not paid except with

respect to "Job 12", as specified in the special issue next above.

6. That the reasonable cost of said extra work on "Job 12" amounted to $150.

7. It was not the intention of appellee to terminate its contract with appellant when the work was stopped by appellant.

9. That appellee did not cause appellant to believe appellee had determined to terminate the contract.

Based on the foregoing findings, and the finding that $3000 was the reasonable attorneys' fees for appellee, and upon the court's own findings, the court rendered judgment:

That appellee recover from appellants jointly and severally the sum of $10,487.-38 as damages, less $150 specified by the findings, or a total of $10,337.38, and that appellee recover its attorneys' fees in the sum of $3000.

Appellants predicate their appeal upon thirteen points.

Appellants' points I, II, III, VIII, IX, present that the court erred in overruling appellants' motion for instructed verdict, and in overruling appellants' motion for judgment notwithstanding the verdict, and in overruling appellants' motion for instructed verdict with respect to appellee's claim for damages for all the reasons set out in said motions. That the judgment is contrary to law and based on a verdict not sustained by the evidence. That the verdict is not sustained by the evidence in that the uncontradicted evidence shows that appellant stopped work because appellee failed to provide the proper supplies, namely, pipe with which to continue performance of the contract.

Appellants' point IV. That it was error to exclude the Contractor's "Bid Sheet" (a) the same showed the intention of the parties and the proper construction of the contract; (b) the same constitutes a separate and distinct agreement with respect to any extra work performed; (c) same notified appellee that the Contractor's Bid did not include the cost of any extra work performed.

Appellants' point VI. That the court erroneously overruled appellants' objections to testimony offered by appellee in rebuttal, as same merely repeated appellee's direct evidence, and such repetition emphasized and bolstered the repeated evidence.

Appellants' point VII. The court erred in refusing to submit appellants' specially requested special issues as set out in appellants' motion for new trial.

Appellants' point X. The undisputed evidence shows that appellee breached the contract and itself performed the work covered by the contract without notice to or request of appellants to continue to perform said contract.

Appellants' point XI. The court erred in sustaining appellee's exception to paragraph IV, set out as paragraph XV in motion for new trial.

Appellants' point XII. Appellee's counsel's argument to the jury constituted reversible error.

Appellants' points V and XIII. That it was reversible error to permit appellee's counsel, over objection, in his argument to the jury to read John G. Bishop's deposition; the said Bishop being present at the trial, but not called by appellant as a witness. The same, as well as the reading of the deposition of D. O. Peddy was prejudicial. The court erred in overruling appellants' objection to the introduction in evidence of the depositions of said witnesses for these reasons: (six reasons are enumerated by appellants.)

Appellee has objected to the consideration of appellants' points I, II, III, VII, and VIII, which have been grouped by appellants, and presented together, on the ground that they are too general, indefinite and that they are multifarious. Where an objection to the form in which a point is submitted is well taken, but where it would merely increase the labor of the parties and of the court to require the points to be re-cast and re-briefed, the points will be construed as making the presentments which the adverse party places thereon, if such construction is a reasonable one. But an objection to a portion of an argument presented by an appellant on the ground that the same is not based on any assignment of error is not addressed to the appellate court's dis-

cretion, and cannot be cured by requiring the parties to rebrief. See Rule 374, Texas Rules Civil Procedure.

We overrule appellants' points I, II, III, VII and VIII. Appellee made out a prima facie case of a right to recover for a breach by appellant of the contract of August 2, 1945, when it produced the contract in evidence, and evidence that appellant ceased work thereunder about the middle of November, 1945, and proved the amount of work which was called for by said contract which remained unperformed, and produced evidence that the reasonable costs of having such work done exceeded the cost for which appellant contracted to do same, and proved the amount of such excess. Appellant produced evidence, not that it ceased to perform work under the contract, but that it had not intended to abandon the contract. Indeed, its defense was that appellee had, under its option contained in the contract to cancel, cancelled the contract. This was a matter of defense, and on this issue appellant had the burden of proof. Appellant did not produce any evidence of an express cancellation. Appellant produced direct and undisputed evidence that appellee failed to furnish it with pipe about the middle of November, 1945. It produced evidence which tended to prove that appellee might have, by a reconditioning job, continued to supply appellant with pipe. However, the evidence so produced by appellant was insufficient to compel the conclusion that appellee in bad faith failed to furnish appellant with pipe, or that appellee intended to and did cancel the contract. There was evidence from which it could be inferred—indeed, the contract itself was direct evidence— that it was contemplated that pipe might not be available when it was needed. There was evidence from which it could have been reasonably concluded that appellant could have continued to perform work under the contract which did not require any scarce material.

Indeed, in response to special issues which were defensive in their nature, the jury made findings unfavorable to appellant's defense that it had not voluntarily abandoned the contract, and that appellee had cancelled it. Appellant did not object to the form of these defensive special issues. And it fails to directly attack the sufficiency of the evidence to support the jury's answers thereto. We cannot hold that the evidence required the court to find as a matter of law that appellee had cancelled the contract, and has failed to make out a case to go to the jury. See Texas Creosoting Co. v. Sims, Tex.Civ. App., 113 S.W.2d 227; McKee v. Reed, Tex.Civ.App., 166 S.W.2d 353.

We overrule appellants' point IV, presenting error on the part of the court in excluding the "Bid Sheet".

The "Bid Sheet", as its name indicates, sets forth appellants' bid to get the job. It specified the charges that it proposed to make for various services. The total of such charges for such services, when combined, came to $1.59 per linear foot. The "Bid Sheet" also proposed that appellant should be paid for all extra work not covered in the specifications OPA maximum equipment rental and the cost of labor, plus 15%. It also specified the list of equipment to be used.

The contract was prepared in the office of appellee. It reads, so far as here material, "This letter, when accepted by you, will constitute contract between Houston Pipe Line Company, referred to as Company, and Russ Mitchell, Inc., of Houston, Texas, referred to as Contractor * * *." It is the contention of appellant that the introduction of the "Bid Sheet" in evidence would have the effect, not of changing the contract, but of showing the intention of the parties in making the contract, in line with such cases as Ryan v. Kent, Tex. Com.App., 36 S.W.2d 1007, and of Reed v. Insurance Co., 95 U.S. 23, 30, 24 L.Ed. 348, quoted from extensively therein.

The portion of the contract which fixed the contract price for the work to be done at $1.59 per lineal foot is quoted from the contract above. So much of the bid as asked for extra charges was excluded from the contract. It is not contended that any fraud was practiced on appellant. Any provision for extra charges could be imported into the contract only by changing it. We must hold that the court correctly excluded the "Bid Sheet", as con-

stituting previous negotiation, and that the whole engagement of the parties and the extent of their undertaking must be presumed to have been embodied in the contract sued on. See Atlas Petroleum Corp. v. Galveston, H. & S. A. R. Co., Tex.Civ.App., 5 S.W.2d 215, err. ref.; Milliken v. Callahan Co., 69 Tex. 205, 6 S. W. 681.

■ We overrule appellants' point VI, complaining that appellee's rebuttal evidence repeated and emphasized its direct testimony. Appellant does not point out or refer to any specific evidence which has such effect. Whether the evidence complained should be described as confirmatory, or stigmatized as repetitious is largely addressed to the discretion of the trial court. See Gulf C. & S. F. Ry. Co. v. Holliday, 65 Tex. 512; Caffarelli Bros. v. Bell, Tex. Civ.App., 190 S.W. 223; 41 Tex.Jur. 889. Appellants fail to make out any abuse of discretion.

■ Appellants' point VII complains of the court's refusal to submit appellants' specially requested instructions, as complained of in the motion for new trial. By reference to said motion we find that appellants complain of the court's refusal to submit their specially requested special issues Nos. 3, 4, 5, 6, 7, 8, 9, and 10. As set forth in the motion, these cover about two pages of the transcript, and manifestly each such specially requested special issue cannot be set out in this opinion, and be individually examined with reference to the special issues which were submitted by the court, and with reference to the evidence, and with reference to its form, as to whether it was evidentiary or inquired as to an ultimate fact issue. Appellants themselves have not done this in their brief. We overrule the point.

Appellants' point X complains of the judgment on the ground that the undisputed evidence shows that appellee breached the contract, and proceeded to perform the work covered thereby without notice to appellant. The evidence did show without dispute that appellee completed that portion of the work which is described in the contract as "Job No. 32", between November 26, and December 1, 1945, without any notice to appellant, and without calling upon appellant to perform same. The fact that appellee's evidence was to the effect said "Job" had become an emergency does not seem to us to present any valid reason for appellee to take over the performance thereof without notice to appellant. For on the face of things there appears to have been no more reason for appellee to deal with such emergency than for appellant, and there was no showing that appellant knew that it was an emergency that Job No. 32 be then completed. Furthermore, it would seem that the nature of the emergency was foreseeable and the contract could have provided for the early performance of said Job No. 32, (which did not require the use of any scarce material). While we have felt some doubt as to whether such action by appellee did not, at least with reference to Job No. 32, amount to a breach of the contract by appellee, however, in view of the fact that we must hold that the contract was breached by appellant about the middle of November, 1945, we have concluded the point should be overruled.

■ We overrule appellants' point IX which complains of the court's action sustaining appellee's exceptions to appellants' allegations to the effect that the provision of the contract which authorized appellee to withhold 15% of the contract until satisfactory completion of the contract was by the parties intended as liquidated damages. It is clear that the contract must be construed as not expressing any intention that the 15% retention was to be liquidated damages. Appellant was required to furnish a performance bond in the amount of approximately the cost of the work. The amount of damages for appellant's failure to perform could be readily ascertained. If there were any doubts, the 15% retention provision would be construed as a penalty, and not permitted to stand as a barrier to the collection of the actual damages. See Sanders Nursery Co. v. J. C. Engelman, Inc., Tex.Civ.App., 109 S.W. 2d 1131.

In their point XII appellants complain that appellee's counsel made improper arguments to the jury which were not warranted by any evidence in the case or in reply to any argument made by appellants'

counsel, and that the arguments were prejudicial and inflammatory. In support of their point, appellants cite seven instances of what they regard as such improper argument. No objection was made by appellants at the time the arguments complained of were made. Appellee has fully answered this contention of appellants in its brief. The point in our opinion is without merit, and is overruled.

We overrule appellants' points VIII and XIII. It is well settled that the depositions of a witness who is present at the trial may be read. O'Connor v. Andrews, 81 Tex. 28, 37, 16 S.W. 628, 15 Tex. Jur. 94. While appellants have not supported their complaint that the court erred in certain respects complained of, which they contend made the portions of the depositions of John G. Bishop and D. O. Peddy inadmissible over their objection, by specific reference to the record, the answer made by appellee in its brief has supplied this defect, and we hold the points are without merit.

The judgment is affirmed.