For the reasons indicated, the judgment will be reversed, and the cause remanded.

---

## LOBIT et al. v. MARCOULIDES et al.
### (No. 7905.)

(Court of Civil Appeals of Texas. Galveston. Nov. 11, 1920. Rehearing Denied Dec. 2, 1920.)

1. **Mortgages** 556—Evidence held to sustain verdict finding contract to take property in satisfaction of foreclosure judgment.

Evidence that an attorney, duly authorized by mortgagors, stated to mortgagees he would bid' in the property, and the latter requested him not to do so, promising to take the property, regardless of what they were compelled to bid for it, in full satisfaction of their judgment, *held* sufficient, though contradicted by mortgagees, to sustain a verdict finding an agreement by the mortgagees to release from deficiency liability, if they procured the property.

2. **Appeal and error** 1002—Verdict on conflicting evidence disturbed only for improper motive.

The verdict of a jury upon conflicting evidence can be disturbed on appeal only when it is so against the great weight and preponderance of the evidence as to justify the court in concluding that some improper motive must have influenced the jury.

3. **Executors and administrators** 87—Evidence held to show executor was authorized to accept mortgaged property in full satisfaction.

·Evidence and agreed statement of facts that a will making defendants executors without bond with power to sell, and testimony, by an executor that he was authorized to act in the transaction as such, and that whatever he did was satisfactory to the estate, is sufficient to sustain the trial court's conclusion that the executor was authorized to make a contract to take the mortgaged property in full satisfaction of the judgment.

4. **Executors and administrators** 125—Not personally liable for money wrongfully obtained by coexecutor.

An executor is not personally liable for money obtained by a coexecutor in violation of an agreement in which the former took no part, and of which he was shown to have no knowledge, in the absence of proof that the

former executor had received benefits from the estate.

**5. Executors and administrators ⬤➾119—Personally liable for money wrongfully exacted for estate.**

An executor, who exacted for the estate money to discharge the lien of a judgment owned by the estate in violation of his agreement to release that judgment if the debtors did not bid at the sale of the mortgaged property, cannot defeat his individual liability for the injury so caused by his plea that he was acting as representative of the estate.

**6. Frauds, statute of ⬤➾74(1)—Agreement not to bid at foreclosure sale is not contract for sale of land.**

An agreement that the mortgagor should not bid at the foreclosure sale, and that the mortgagee would take the property bid in at the sale, in full satisfaction of the mortgage, is in effect an agreement to release the deficiency judgment, and not a contract for the sale of land, and therefore not required to be in writing by the statute.

**7. Mortgages ⬤➾556 — Mortgagor's refraining from bidding at sale consideration for release of deficiency liability.**

The promise of mortgagors not to bid at the foreclosure sale, whereby the mortgagees were enabled to bid in the property for less than its market value, and to avoid the payment of sheriff's fees on the full value, is sufficient consideration for the promise of the mortgagees to release their deficiency liability.

**8. Appeal and error ⬤➾186—Privilege of executor to be sued in county of appointment cannot be raised for first time on appeal.**

If an executor, who resides in a county other than that in which the will was probated, can only be sued in the county of probate, under Rev. St. 1895, art. 1194, § 6, he waives that right by failure to present a plea of privilege in the court below, and cannot raise the question on appeal.

**9. Payment ⬤➾88—Recital of protest and right to sue saves right to recover money paid.**

Where the owners of land, in order to secure its release from the lien of a judgment, which the creditor refused to satisfy, in violation of his agreement, paid the amount of the judgment and took a receipt, stating that the payment was under protest, and did not defeat the right to sue to recover the money, a suit can be maintained to recover the money so paid, regardless of whether the facts amounted to payment under duress or not.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Helen Marcoulides and another against Louis Lobit and another. Judgment for plaintiffs, and defendants appeal. Reformed and affirmed.

Stewarts, R. W. Houk, and Geo. D. Sears, all of Houston, for appellants.

Woods, Barkley & King, of Houston, for appellees.

PLEASANTS, C. J. Appellees, Helen Marcoulides and Mary T. Gonzales, brought this suit against appellants, Louis Lobit and Paul Lobit, as executors of the estate of Joseph Lobit, deceased, and as individuals, to recover the sum of $5,753.81, which appellees had paid to said executors under protest, and with the express understanding and agreement that such payment would not affect appellees' right to thereafter sue for recovery of said sum. The record discloses that on February 19, 1916, the appellants, as executors of the estate of Joseph Lobit, deceased, recovered a judgment in the district court of Galveston county against the appellees for the sum of $15,000, with foreclosure of a mortgage lien upon property of appellees situated in the city of Galveston. An abstract of this judgment was filed in Cameron county on February 22, 1916. On March 9, 1916, an order of sale was issued on the judgment and levied upon the Galveston property on which the lien had been foreclosed, and the property advertised for sale on April 4, 1916. Before the day of the sale appellee Mrs. Marcoulides, acting for herself and her coappellee, with her attorney, Mr. Elliott Cage, called on appellant Louis Lobit and made an agreement with him in regard to the sale.

The testimony is in direct conflict as to the terms of this agreement, but as the result of the agreement neither the appellees nor their attorney attended the sale, and the property was sold by the sheriff to appellant executors for the sum of $2,800; there having been no other bid at the sale. Appellants resold a part of the property on May 13, 1916, for $5,000, and the remainder on September 29, 1916, for $5,000. This $10,000, after the costs of suit and sale had been deducted therefrom, was credited on the judgment against appellees, leaving a balance due on the judgment of $5,753.81. There is evidence to the effect that the fair value of the property under normal conditions exceeded the amount of the judgment against appellees, but at the time these sales were made by appellants, owing to war conditions, there was little or no demand for property in Galveston, and there is no evidence to justify the conclusion that the property could at that time have been sold for more than appellants received for it.

Appellees own a tract of land in Cameron county on which they negotiated a loan of $10,000 in the summer of 1917. When they procured an abstract of the title to this land, which was necessary to enable them to obtain the loan, they for the first time discovered that the appellants had recorded an abstract of the Galveston judgment in Cameron county. Being unable to obtain the loan without securing a release of this judgment, they demanded such release of appellants, on the

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ground that, by the terms of the agreement made by them with appellants prior to the sale of the Galveston property under the order of sale, appellants, in consideration of the agreement of appellees not to bid at the sale, and to permit appellants to buy in the property at as low a price as possible, and thus reduce the costs of the sale, agreed to accept the property so bid in by them in full satisfaction of the judgment against appellees. Appellants, claiming that they had made no agreement, refused to release the judgment. Appellees then, in order to procure their loan, which they had negotiated at large expense, agreed to pay appellants the amount claimed by them, with the understanding that they paid it under protest, and such payment should not prejudice their right to sue for its recovery. Appellants received the money under this express agreement, and so stated in the receipt and release executed by them to appellees.

Plaintiff's petition, after the formal allegations and allegations as to the procurement by appellants of the judgment in the district court of Galveston county, and the issuance and levy of the order of sale and the advertisement of the property for sale, contains the following allegations:

Appellees further alleged that the property situated in Galveston county, and which had been advertised for sale under said execution and order of sale, was worth far in excess of the amount of the judgments held by the Lobit estate against them; that Elliott Cage, who was duly authorized to act for appellees in the premises, went to Galveston and made an investigation as to the value of said properties so advertised, and, believing the same to be worth far in excess of the amount of said judgments, was preparing to bid a part of said property in for the benefit of appellees, and would have done so, had it not been for an agreement that he made and entered into with Louis Lobit, one of the executors of the Lobit estate, and who was duly authorized to make such agreement, to the effect that if appellees would not bid at the sale of said property, or force the Lobit estate to incur the expenses of commissions to the sheriff for making said sales at a large value, and permit the executors of the Lobit estate to buy said property in at whatever figure or sum of money that they could buy same at said sale, that they would accept said property in full satisfaction of all of the indebtedness represented by said judgments, and of all the indebtedness and claims due and owing by appellees, or either of them, to the Lobit estate; that relying upon said agreement between the said Elliott Cage, acting for appellees in the premises, and the said Louis Lobit, acting for the Lobit estate, appellees were not represented at said sale, and permitted the executors of the Lobit estate to buy said property so advertised at a nominal sum;

that prior thereto, and without the knowledge of appellees, appellants had caused to be abstracted said judgment in the office of the county clerk of Cameron county, where appellee Mrs. Helen Marcoulides owned a league of land; that thereafter appellee Marcoulides had arranged at much expense for a loan of several thousand dollars on said Cameron county land, and that she had prepared an abstract to said land, and that the abstract of said judgment appeared therein and had not been released; that thereupon they demanded of appellants that a release of said judgments be filed in Cameron county; in order that she might proceed with the loan that she had planned to obtain on said land, but that appellants wholly failed and refused to execute a release thereto, except upon the payment by appellees of the sum of $5,753.81, which they claimed to be the balance due and owing them on the judgments that they held against appellees, and which appellees had claimed had been settled under the agreement, hereinbefore mentioned, with Elliott Cage.

Appellees further alleged that, after negotiations for said loan had progressed to such an extent, appellees could not recede from taking the loan without spending a large sum, all of which was well known to appellants; that thereupon, to save themselves the loss of a large sum of money, they had paid under protest the said sum of $5,753.81, which said sum was paid on the 14th day of August, 1917, and without prejudice of their right to bring suit therefor; that the said Louis Lobit, acting as the duly authorized executor of said Lobit estate, had agreed with appellees and their representatives, as hereinbefore alleged, to accept the Galveston county property in full settlement and satisfaction of all amounts due by appellees to appellants, knowing that such property was worth more than the judgments held by appellants against appellees, and that the said Louis Lobit fraudulently agreed with appellees and their representative to accept such property in full settlement and satisfaction of such judgments, for the purpose of keeping them from bidding such property in for the amount of said judgments, and in order that he might bid such property in for a nominal consideration far below its real value, and to then, after he had obtained the title to same, and after securing the same, to allege and claim that other sums were due by appellees to appellants, and for the purpose of extorting from the appellees such sum of $5,753.81; and that because of all of which acts appellants did extort from the appellees said sum, the same being paid to them in Harris county, where the said Louis Lobit then resided. Appellees further alleged that, though often requested, appellants had failed and refused to return said sum of money, and still refuse to do so.

Appellants answered by a general demurrer and general denial, and specially that neither they, nor any one by them duly authorized, made any agreement whatsoever with appellees, but that, because of the friendly relations existing between the parties, appellant Louis Lobit, individually, and not as executor, assured appellees that all the executors of the estate of Joseph Lobit wanted and desired was to be reimbursed in the full amount, principal and interest, that the appellees were indebted to Joseph Lobit, and the firm of Adoue & Lobit, and further that the said Louis Lobit stated that it was his position to so continue and handle the matters pertaining to the estate of Joseph Lobit as to bidding in the property and to resell same at the best price obtained, and that he had done so, etc., and that after giving appellees credit with all that they were able to secure for said property, that there remained the sum of $5,753.81 due them on said judgment; that they had abstracted said judgment in Cameron county, and that the same became a valid and subsisting lien on said real property owned by appellees; that appellees desired to secure a release of said lien, and thereupon appellants agreed to and did accept from appellees the said sum of $5,753.81, and did thereupon release and fully discharge said judgment, and the lien resulting from and created by the recording of same in Cameron county; that appellants denied any agreement whatever, such as was alleged by appellees, and pleaded the statute of frauds, and alleged that the agreement, if any made, was not enforceable, but void by reason of the provisions of the statute of frauds, because same was not in writing, and further that there was no consideration to support the alleged agreement.

By way of supplemental petition, appellees replied that Louis Lobit, individually and as executor of the estate of Joseph Lobit, and as co-owner and partner with Paul Lobit, and acting individually and as the executor of the estate of Joseph Lobit, and as co-owner and as the partner of Paul Lobit, made the agreements with the appellees alleged by them in their petition; that the agreement or consideration moving from appellants to appellees individually, and in the capacity alleged, was that they would permit appellants to buy in such property at a nominal sale, without the cost and expense of a high bid at sheriff's sale, and would give the complete title thereto to appellants in full settlement of all amounts due on said judgment. Appellees further pleaded that appellants were estopped to plead the statute of frauds, because, as was well known to them, appellees had a party able, ready, and willing to bid in the property to be sold for the full amount of the judgment, interest, and costs, and that, but for the acts, representations, and agreements made by appellants, such property

would have been bid in at such sheriff's sale for the full amount of the judgments held by said appellants, together with the interest and costs thereon, and because of such representations and agreements so made appellees had no person to bid thereon.

The cause was tried in the court without a jury, and in response to a special issue submitted by the court the jury found:

"That Louis Lobit, acting as executor of the estate of Joseph Lobit, deceased, agreed with plaintiffs' attorney, Elliott Cage, acting for plaintiffs, to accept the Galveston property of plaintiffs in full satisfaction of the Galveston county judgment of the estate of Joseph Lobit against plaintiffs."

This was the only issue submitted to the jury. Upon the return of this verdict by the jury, judgment was rendered in favor of plaintiffs against both defendants individually and in their capacity as executors for the sum claimed by plaintiffs.

[1] Appellants' first assignment of error assails the verdict of the jury on the ground that there was no evidence to support it, and their second assignment complains of the submission by the court of the issue to the jury, "because the same was contrary to the evidence, there being no evidence to support the issue." These assignments are submitted together and each is submitted as a proposition.

Waiving any question of the sufficiency of the assignments as submitted to require our consideration, neither of them can be sustained. The witness Elliott Cage testified for appellees as follows:

"After I received that copy of notice of sale, I went to Galveston to see just what the condition of things was. I investigated the records there in the courthouse and the values of the property. I do know Mr. Louis Lobit and called on him at Houston after I had investigated the records and property in Galveston. The substance of the agreement had with Louis Lobit on behalf of Helen Marcoulides and Mary T. Gonzales was this: I went to see Mr. Lobit, * * * and told him I was representing Mrs. Marcoulides and Mrs. Gonzales, and wanted to know if something could not be done about the judgment. He said he was going to make the sale of the property. He professed himself to be very friendly towards Mrs. Marcoulides and Mrs. Gonzales, and he told me that he did not care anything about a judgment against them; * * * that he was perfectly willing to let the property advertised for sale settle that judgment. I told him, if he was willing to do that, I would not bid at the sale; that if he was going to make a straight sale of that property, and claim a deficiency judgment against them, if the property did not make enough to pay that judgment, I would go to Galveston and bid at the sale, by bidding them out of the property. He told me he did not care about a deficiency judgment against them, and, if I would not bid, he would bid in the property at his own price, but would let the property settle the judgment, and not claim a deficiency judgment against them."

He testified further:

"They (meaning appellees) turned the matter over to me to take care of. I would, but for his agreement to take the property in satisfaction of the judgment, have bid it in for the judgment for them."

Cage further testified:

"I can tell you exactly what our agreement was, and will do so, after your directing my attention to the two statements, that he was going to take the property in satisfaction of the judgment, and the other statement that whatever he could sell the property for would be credited against the judgment. As I told you, my impression from that was he would give her the profit; if he sold the property for more than the amount of the judgment, he would give her the benefit of it. His agreement was he would take the property in satisfaction of the judgment and claim no deficiency against her."

He further testified:

"He (meaning Louis Lobit) told me that he would accept this property in satisfaction of that judgment, and would claim no deficiency judgment against either Mrs. Marcoulides or Mrs. Gonzales. When the sheriff would sell that property under this order of sale, there would be fees going to the sheriff for making that sale, quite a sum of money, and that, I think, is one of the reasons that Mr. Lobit did not want me to bid at the sale; he would have to bid a great deal more, if I run the property up."

Mrs. Marcoulides, one of the appellees, testified as follows:

"After my friends told me that they were afraid that he would not treat me fairly, I did go to get Mr. Elliott Cage to look after it for me, and he went around to see Louis. I certainly did give Elliott Cage full authority to do any and all things for me. Elliott Cage was both my cousin and my lawyer."

She further testified:

"I did give Elliott Cage authority as my agent and attorney to do anything he saw fit. Mr. Cage also represented my sister, Mary T. Gonzales."

With this testimony in the record, we cannot see how it can be seriously contended that there was no evidence to support the verdict of the jury.

[2] The testimony in the record contradictory of that of Mr. Cage presented an issue which it was the exclusive province of the jury to determine, and this court is only authorized to disturb the verdict of a jury upon conflicting evidence, when such verdict is so against the great weight and preponderance of the evidence as to justify the court in concluding that some improper motive must have influenced the jury in arriving at the verdict. There is no assignment of error attacking the verdict on this ground, and if such assignment had been presented it could not be sustained.

[3] The third and fourth assignments assail the judgment on the ground that the evidence fails to show that the executors of the Joseph Lobit estate were authorized to make the agreement in question, and fails to show that appellant Paul Lobit, one of the executors, made the agreement, or had any knowledge that it had been made by his coexecutor. The will of Joseph Lobit was not introduced in evidence, but the following agreement was in evidence:

"It is admitted and agreed in this case that the will of Joseph Lobit was duly admitted to probate in Galveston county, Tex., and that by the terms of said will he devised his entire estate to his five children, namely, Paul Lobit, Louis Lobit, Joe Lobit, Edgar Lobit, and Bertha Lobit, and by that will he appointed as independent executors Paul Lobit and Louis Lobit, without bond, free from control of any court, with power to sell and convey real property, and that said persons named as executors duly qualified as executors under said will. And this agreement may be considered as though a duly certified copy of that will were produced and introduced in evidence by the plaintiffs in this cause. That the estate has never been completely divided."

The defendant Louis Lobit testified without objection as follows:

"In all these transactions I was fully authorized to act as executor of the Lobit estate. I was in all these matters authorized to handle it for the Lobit estate. Whatever I did was satisfactory."

We think this agreement and evidence, none of which was contradicted, fully sustain the conclusion of the trial court that the agreement made by Louis Lobit, upon which appellees' suit is based, was made by him as executor of the estate of Joseph Lobit, and was binding upon the estate.

The next assignments of error presented by appellants attack the judgment against appellants individually, on the ground that there is no evidence that either of appellants have received any money or property from the estate of Joseph Lobit, and therefore cannot be held liable individually upon a contract made by Louis Lobit in his capacity as executor of said estate, and for the benefit of the estate.

[4] These assignments, in so far as they relate to appellant Paul Lobit, must be sustained. He was not a party to the agreement, and is not shown to have had any knowledge of its execution, nor is there any evidence showing that he has received any property or money from the estate of Joseph Lobit, and he cannot be held liable for the sum wrongfully obtained for said estate by his coexecutor from appellees.

[5] We do not think, however, that appellant Louis Lobit is exempt from such liability. The jury has found that he made the agreement with appellees as claimed by them, and the undisputed evidence shows that he

violated such agreement by demanding and obtaining from appellees the sum in controversy. In these circumstances he cannot defeat his individual liability for the injury caused appellees by his wrongful conduct by the plea that he was acting as the representative and for the benefit of the Lobit estate. Both he and the estate are liable to appellees for the sum so obtained by him from them.

[6] There is no merit in the contention made under an appropriate assignment of error that the agreement upon which appellees' suit is based was unenforceable, because it was a parol agreement for the sale of real estate, and therefore obnoxious to the fourth subdivision of our statute of frauds. The agreement was not one for the sale of real estate. The real estate to which the agreement referred was sold under order of the court, and the agreement only incidentally related to the sale, and its sole purpose was to obtain from appellants a release of any balance that remained on the judgment after it was credited with the property ordered to be sold or its proceeds. The consideration for this agreement was the forbearance of appellees to bid at the sheriff's sale, in order that appellants might obtain the title to the property for a nominal sum, and thereby reduce the amount of commissions to be paid the officer making the sale. We can see nothing in this agreement which contravenes the statute of frauds.

[7] The evidence is sufficient to show that the value of the property exceeded the amount of appellants' judgment, and this excess value, together with the lesser costs to appellants of obtaining the title, was a sufficient consideration for the agreement.

[8] The will of Joseph Lobit, by which appellants were appointed independent executors of his estate, was probated in Galveston county. The appellant Louis Lobit resides in Harris county. If it be conceded that the administration of an estate by an independent executor who resides in a county other than that in which the will was probated is within the purview of section 6 of article 1194, Rev. St. 1895, fixing the venue of suits in a demand for money against the executor or administrator of an estate in his representative capacity in the county in which such estate is administered, and that venue of such suit under the statute is in the county in which the will was probated, appellants, having failed to present a plea of privilege in the court below, cannot raise the question of venue in this court. Dickson v. Scharff, 142 S. W. 980.

Appellants' last contention is that the trial court erred in not instructing the jury to return a verdict for the defendants, because the undisputed evidence shows that the money sought to be recovered by plaintiffs was not paid under duress, "and [was paid] without accident, fraud, or mistake," and that such payment was a voluntary payment of a sum justly due the estate of Joseph Lobit by the plaintiffs in satisfaction of a valid judgment against them in favor of said estate.

We cannot agree with appellants in this contention. If, as found by the jury, appellant Louis Lobit agreed to take the Galveston property in full satisfaction of the judgment against appellees, the amount thereafter paid appellants by appellees to obtain a release of the lien upon their Cameron county lands, created by the filing in said county of an abstract of said judgment, was not money owed appellants by appellees. It is unnecessary for us to decide whether, under the circumstances shown by the evidence, if the payment had been made by appellees without any agreement between the parties that said payment would not affect appellees' right to litigate the question of whether they justly owed appellants the sum paid them, the money could be recovered upon the ground of duress. We are inclined to the opinion that, under the facts shown by the record, the payment was made under such duress of property as would entitle appellees to sue and recover back the money from appellants. First National Bank v. Sargeant, 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296.

[9] We think the question of appellees' right to recover the money which, under the finding of the jury, appellants were not entitled to demand of them is relieved of all doubt by the express terms of the release and receipt executed by appellants when the money was paid by appellees. The release receipt recites that the sum paid by appellees to obtain the release of the judgment was paid under protest; "they claiming no sum due thereon, and without prejudice to their right, if any, to bring suit therefor." Having obtained the money from appellees under this express agreement, appellants cannot claim that the payment was a voluntary one, and that appellees cannot recover the money which, under finding of the jury, they did not owe appellants, and it would be manifestly unjust to allow appellants to retain it. 21 Ruling Case Law, p. 143; U. S. v. Edmonston, 181 U. S. 500, 21 Sup. Ct. 718, 45 L. Ed. 978.

We have fully considered each and all of appellants' assignments of error, and in our opinion none of them can be sustained, except the assignment complaining of the judgment against appellant Paul Lobit individually, before discussed and sustained. It follows that the judgment of the trial court must be reformed, as above indicated, and affirmed; and it has been so ordered.

Reformed and affirmed.