EDWARDS v. WILLIAMS.

No. 4570.

Court of Civil Appeals of Texas. Amarillo.

April 13, 1936.

C. D. Russell, of Plainview, for appellant.

Meade F. Griffin and Vincent Tudor, both of Plainview, for appellee.

JACKSON, Justice.

This suit was instituted on August 6, 1934, by D. P. Williams in the justice court of Lamb county against Mrs. Effie Edwards to recover $177 which he claimed he had paid to her under duress.

On account of the negligence of her attorney, Mrs. Edwards failed to appear and contest the case in justice court, and judgment was rendered against her for the amount sued for, with interest thereon at 6 per cent. per annum, and for costs of suit.

On a petition for a writ of certiorari and bond, the court ordered that a writ of certiorari issue to the justice court. In response thereto a certified copy of the proceedings in the justice court were transmitted to the county court, a citation issued, and on a trial de novo therein the appellee again recovered the amount sued for against appellant, from which judgment this appeal is prosecuted.

Mrs. Edwards, as landlord, leased to D. P. Williams, as tenant, 320 acres of land in Lamb county to be cultivated in cotton in 1933, and was to receive as rent one-fourth of the cotton produced on the premises.

After the federal government inaugurated its cotton reduction program, the landlord and tenant having failed to agree upon the division of the "plow-up money," entered into the following agreement:

"This contract made and entered into this the 5th day of July, A. D. 1933 by and between Mrs. Effie Edwards, Party of the First Part, and D. P. Williams, Party of the Second Part.

"Party of the First Part agrees to accept and Party of the Second Part agrees to pay the percentage of proceeds received from government in cotton reduction program that is customary in the particular locality in which D. P. Williams is now renting from Party of the First Part.

"Party of the Second Part further agrees to keep all land clean from weeds and well cultivated and to turn that part of the land that the cotton is destroyed on over to the Party of the First Part at any time Party of the First Part may demand, but to keep well cultivated until said date possession is demanded."

At the time of this agreement the tenant promised to pay out of his part of the "plow-up money" $75 for a house. Later he desired to plant in feed the land on which the cotton was plowed up, and to enable him to obtain the seed for that purpose his landlord advanced him $17, which he also agreed to repay out of his part of the "plow-up money." At this time the parties further agreed that he would farm the 320 acres in 1934.

Appellee contends that the written contract relative to the division of the "plow-up money" according to the custom of the community was never changed. That about November 1, 1933, he received from the government its check, payable to him and appellant, for a portion of the "plow-up money," but she refused to indorse said check unless she received one-third of its proceeds, but he insisted she was entitled to receive only one-fourth thereof. That at the time he was indebted to a number of other parties who were pressing him for payment. That he had no funds with which to pay such parties, but promised to pay them out of the government money, and on account of his need of funds, he was forced to submit to the landlord's demands and did agree to a division of the check one-third to her and two-thirds to himself. That on May 1, 1934, he received from the government a check for approximately $300, the balance due for the reduction of the crop, which check was also payable to himself and his landlord, and upon her refusal to indorse this last check, he also agreed to and gave her one-third thereof. That this division was made under protest, and he was forced to pay her $177 more than she was entitled to under their agreement.

Appellant's contention is that at the time she advanced the money to buy the seed, and made the rental contract with appellee for the farm for the year 1934, the written contract was abrogated, and the parties agreed on a division of the funds received from the government one-third to her and two-thirds to the tenant.

The testimony offered by appellant on the issue of duress affirmatively contradicted the testimony of appellee, and would, if believed by the court, have been sufficient to authorize a judgment defeating appellee's claim, but inasmuch as the court found for the tenant, it is unnecessary to set out her testimony in detail.

The testimony shows that there were approximately 100 farmers in the community where the appellee lived and, over the objection of appellant, two landowners and three or four tenants each testified that he settled for the "plow-up money" on a basis of one-fourth to the landlord and three-fourths to the tenant, and on this, together with the statement that they knew how five

or six other tenants had settled, they based their judgment that they knew the custom in the community where the appellee lived, and that it was for the landlord to receive but one-fourth of the funds obtained from the government.

■■■ Appellee bases his right to recover on alleged duress and he cannot recover in this suit on any other cause of action. The testimony fails to disclose the amount due by appellee to any creditor, the character of the pressure for the payment thereof, that he was unable to meet such payments out of the two-thirds of the "plow-up money" he received, that the alleged coercion affected his business, inflicted irreparable injury, that he had no adequate remedy at law for his protection, or that appellant could have enforced her demand without a suit. While the court found against the existence of the agreement to divide the fund one-third to her and two-thirds to appellee, there is nothing in the record to indicate that her claim that such contract was made was not in good faith.

"Where, in an emergency which arises through no fault of his own, a person is compelled, through the necessity of protecting his business interests, to pay an unlawful demand, the payment is compulsory and may be recovered back, such as a payment made to avoid a great financial loss, or under a business necessity to free property of some duress or lien." 48 C.J. para. 302, page 750.

"In the absence of a statutory provision otherwise, a payment cannot be recovered back as being compulsory or involuntary by reason of the mere fact that it is paid unwillingly, and that the payor at the time of payment makes a protest against the payment. 48 C.J., para. 305, page 751.

"The general rule is that, where an unfounded or illegal demand is made upon a person, and the law furnishes him adequate protection against it, or gives him an adequate remedy, and, instead of taking the protection the law gives him or the remedy it furnishes, he pays what is demanded, such payment is deemed to be voluntary, and not a compulsory, payment, as where the party making the demand is compelled to resort to the courts in order to enforce it, and the payor settles and pays the claim without presenting any defense." 48 C.J. para. 310, page 753.

"The courts have drawn a distinction between the cases where, although the claim asserted or demand made is wrongful or un-

lawful, the party asserting the claim or making the demand is compelled to resort to the courts to enforce the same, and the cases where the party making such demand possesses, or is supposed to possess, the power to enforce such demand against the property of the party claiming duress without resort to the courts.

"In the former class of cases it is held, we think, with practical uniformity, that there is no duress. Phœnix Land Co. v. Exall (Tex.Civ.App.) 159 S.W. 474, 485, pars. 9 and 10 (writ refused); Shuck v. Interstate Building & Loan Ass'n, 63 S.C. 134, 41 S.E. 28, 32, 33; Benson v. Monroe, 7 Cush. (Mass.) 125, 54 Am.Dec. [716], 717; Forbes v. Appleton, 5 Cush.(Mass.) 115, 118.

"The latter class includes cases where one party has possession of the property of another and refuses to surrender it except upon compliance with a wrongful demand and the delay of an action to recover it would cause great or irreparable injury, cases where one party is invested with the power to sell or dispose of the property of another and threatens to exercise such power wrongfully or oppressively and in a way to sacrifice such property or inflict great or irreparable injury, and other cases in which one party may be in a position to inflict in various ways great or irreparable injury to the property or property interests of another if compliance with the unlawful demand is refused." Ward v. Scarborough (Tex.Com.App.) 236 S.W. 434, 437.

In our opinion, the testimony fails to show that the appellee paid the appellant the $177 under duress.

■■■ On the question of custom, the evidence does not disclose whether the specific instances of settlements between landlords and tenants occurred prior to the time appellee claims to have paid the money to appellant, and in order for appellant and appellee to settle according to custom, as provided for in the written contract, it should have been shown that such custom existed at the time when appellee claims that, acting under duress, he paid appellant the money.

In view of the reversal of the judgment, we deem it unnecessary to pass on the admissibility of the testimony on custom, but we call attention to the law as announced in 17 C.J. paragraph 87, page 520, and paragraph 91, page 623.

The judgment is reversed and the cause remanded.