SPRING BRANCH BANK, et al., Appellant,

v.

Walter H. MENGDEN, Sr., Appellee.

No. A2616.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 31, 1981.

Rehearing Denied Feb. 25, 1982.

Sharon Stagg, Boswell, O'Toole, Davis & Pickering, Joe G. Roady, Sheinfeld, Maley, & Kay, Houston, for appellant.

B. J. Walter, Foreman & Dyess, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

JUNELL, Justice.

Appellants Spring Branch Bank and James C. Winters appeal from judgment in favor of appellee Walter H. Mengden, Sr., plaintiff in the court below in a suit to recover a portion of the attorneys' fees paid by appellee in order to avoid foreclosure on oil and gas properties. We reverse and remand.

Mengden borrowed $575,000 from Spring Branch Bank and executed a promissory note in that amount. The note was secured by deed of trust covering a working interest in oil and gas property located in Dewitt, Gonzales, and Harris Counties, Texas. The note, which had been prepared by Mengden's attorney, provided for payment of attorneys' fees in the amount of ten percent (10%) of the unpaid principal and interest in the event of default. Mengden did not pay the note when, after several extensions, it became due on December 27, 1973. The Bank posted notice for foreclosure to be held on the first Tuesday in March, 1974. The record is unclear as to the exact date payment was made. Either on the day before or on the Friday before the scheduled foreclosure sale, Mengden paid to the Bank (with both payor and payee acting through their attorneys) the total amount demanded to avoid foreclosure, $675,827.73; that amount included $575,000 principal, $39,388.85 interest, and $61,438.88 attorneys' fees. The Bank paid to appellant Winters, the attorney who represented the Bank in this matter, the full amount of attorneys' fees collected, $61,438.88. Winters testified at trial that he had expended approximately 75 hours of recorded time on this matter and another, unrelated file. In May of 1974 Mengden wrote to the Bank and requested refund of a portion of the attorneys' fees; on January 3, 1975, Mengden filed suit to recover allegedly unreasonable attorneys' fees. In response to special issues submitted to the jury at the trial on the merits, the jury found that (1) the amount paid was unreasonable and (2) $30,000 was a reasonable amount to be paid; the jury *failed* to find that (3) Mengden had waived the right to contest reasonableness and (4) Mengden had paid under duress. Both parties moved for judgment on the verdict. Notwithstanding a finding favorable to the defense on the issue of duress, the trial court entered judgment for Mengden in the amount of $31,438.88 together with interest at the rate of 9% per annum from the date of collection, March 4, 1974, until paid.

Appellants present 23 points of error for review. We have considered all 23 points of error as well as appellee's crosspoint. For convenience in discussing the issues before us, we have reworded and grouped the various points raised in accordance with our understanding and analysis of the case. We will first consider those issues related to the question of duress and the jury's failure to make an affirmative finding to Special Issue No. 4 as to whether the payment of 10% in attorneys' fees was made under duress. Appellants argue that the determinative issue in this case is not whether the attorney's fees were reasonable but whether the Bank and its attorneys had the legal right to demand payment in accordance with provisions of the note signed by Mengden. Appellants argue that a voluntary payment on a claim of right cannot be recovered in the absence of fraud, duress or compulsion. Appellants further contend that not only did appellee fail to obtain a jury finding of duress but appellee cannot establish duress as a matter of law because the Bank had the legal right to demand 10% in attorneys' fees. Appellee concedes that

threatening to exercise one's legal rights does not constitute duress but, predictably, appellee takes the position that the Bank had no legal right to demand *unreasonable* attorneys' fees to prevent extrajudicial foreclosure and that, therefore, the Bank's demand amounted to duress as a matter of law. It is undisputed that Mengden had defaulted on the note and that the Bank had the power to foreclose on Mengden's property unless Mengden paid the amount demanded.

The threshold issue which we must decide is whether Spring Branch Bank had the legal right to demand payment of an amount which included attorneys' fees in the amount of 10% as stipulated in the promissory note on which Mengden had defaulted, which promissory note was secured by property over which Spring Branch Bank had the power to complete extrajudicial foreclosure within a few days.

■ It is well established in Texas that the attorneys' fee clause in a promissory note is in the nature of a contract to indemnify the holder of the note for attorneys' expenses actually incurred in collecting principal and interest on the note. *F. R. Hernandez Construction & Supply Co., Inc. v. National Bank of Commerce of Brownsville*, 578 S.W.2d 675, 676–7 (Tex.1979). The legal owner and holder of a promissory note is prima facie entitled to recover the attorneys' fees stipulated therein upon the happening of the contingency which makes the same payable. *Id.*, citing *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948 (1960). The holder of the note is not entitled to recover the full contractual amount if the obligor of the note shows that the fee should be limited to an amount that is reasonable under the circumstances. *Id.*

■ While both appellants and appellee agree, and the trial court so instructed the jury, that the obligor of a note can challenge the reasonableness of contractual attorneys' fees, they disagree as to what constitutes a timely, proper showing of unreasonableness when the challenge arises *after* allegedly unreasonable fees are paid. In a suit to collect on a promissory note the obligor can plead and prove the affirmative defense that the contractual fee is unreasonable. Such an affirmative defense is not in the nature of a recovery but is asserted in a lawsuit *before* payment is made and requires that the obligor show (1) that the contractual fee is unreasonable and (2) what lesser amount is reasonable. 578 S.W.2d at 677. The instant case arises in a different context; it involves a challenge brought *after* payment was made in a situation where the party making the demand need not resort to the courts to enforce such demand.

■ The general rule is that money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered. *Pacific Molasses Co. v. Graves*, 451 S.W.2d 294 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.); *West Texas State Bank v. Tri-Service Drilling Co.*, 339 S.W.2d 249 (Tex.Civ.App.—Eastland 1960, writ ref'd n.r.e.). It is well established in Texas that as a matter of law there can be no duress unless there is a threat to do some act which the demanding party has no legal right to do; there must be some illegal exaction or some fault or deception; the restraint must be imminent and such as to destroy free agency without the present means of protection. *C.F. & I. Steel Corp. v. Pete Sublett and Co.*, 623 S.W.2d 709 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.*, 482 S.W.2d 330 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.); *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551 (Tex.Civ.App.—Dallas 1965, no writ); *Scurlock v. Lovvarn*, 410 S.W.2d 525 (Tex.Civ.App.—Dallas 1966, no writ); *Lawrence v. Huber*, 347 S.W.2d 5 (Tex.Civ.App.—Waco 1961, no writ); *Stanford v. United States Inv. Corp., Ltd.*, 272 S.W. 568 (Tex.Civ.App.—Waco 1925, writ dism'd); *Ward v. Scarborough*, 236 S.W. 434 (Tex.Comm'n App. 1922, opinion adopted). It is never duress to threaten to do that which a party has a legal right to do. *Ulmer v. Ulmer*, 139 Tex. 326, 162 S.W.2d 944

(1942). Texas courts have drawn a distinction between cases in which the party asserting a claim or demand must resort to the courts to enforce the same and those cases (like the instant case) in which the party making a claim or demand has the power to enforce the same extrajudicially. *Ward v. Scarborough*, 236 S.W. at 437–8.

The latter class includes cases where one party has possession of the property of another and refuses to surrender it except upon compliance with a *wrongful demand* and the delay of an action to recover it would cause great or irreparable injury, cases where one party is invested with the power to sell or dispose of the property of another and threatens to exercise such power *wrongfully or oppressively* and in a way to sacrifice such property or inflict great or irreparable injury, and other cases in which one party may be in a position to inflict in various ways great or irreparable injury to the property or property interests of another if compliance with the *unlawful* demand is refused.

In this latter class of cases duress may exist, although some measure of relief or redress might have been secured by an action in the courts.

*Id.* (emphasis added).

Because appellants have vigorously urged upon us a number of cases, including *Stanford v. United States Inv. Corp.*, 272 S.W. 568, *Runcie v. Runcie*, 407 S.W.2d 861 (Tex. Civ.App.—Amarillo 1966, writ ref'd n.r.e.), and *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948, in support of their position in this appeal we consider it important to stress the above distinction recognized by the Texas courts. The cases just named are examples of those cases in which the demanding party must resort to the courts to enforce the demand and are therefore not dispositive of the instant case.

Appellee would have us hold that the record before us establishes duress as a matter of law. We decline to do so.

Appellee relies on cases which, like the case before us, are in the class of cases where a demand can be enforced without resort to the courts and in which recovery was allowed but which are distinguishable from the instant case in that they involve wrongful or illegal demands. For example, where a forfeiture clause provided for enforcement without resort to judicial process, the doctrine of duress was said to be available as a basis for recovery of taxes and minimum royalties demanded and paid under the disputed terms of an assignment contract. *Kenyon v. United Salt Corp.*, 129 S.W.2d 402 (Tex.Civ.App.—Galveston 1937, no writ). Appellee cites the *Kenyon* court's affirmance of that trial court's finding, independent of the jury, that such payments had been made under duress. *Kenyon* is distinguishable from the instant case, however, for that court concluded that the demand for payment was not consistent with the terms of the contract on which the demand was predicated; the demand in the instant case was for the percentage amount stipulated in the promissory note in unambiguous language. The same distinction is apparent in *Ward v. Scarborough*, 236 S.W. 434, in which the payment sought to be recovered had also been exacted by an illegal or wrongful demand by payee.

In our opinion the demand for attorneys' fees in the percentage amount stipulated in the promissory note did not constitute an illegal or wrongful demand. Such demand may have been an unreasonable one, but in many cases 10% may in fact be a reasonable fee. When the payor has signed a promissory note expressly providing for attorneys' fees in the amount of 10% of the principal and interest due in the event of default, it is incumbent upon the payor to challenge the reasonableness of the amount demanded. One who demands payment in accordance with the express terms of a promissory note cannot be said to have made an illegal or wrongful demand of the person who signed that note. Therefore, duress is not established as a matter of law.

The party claiming duress has the burden of proof on the issue of duress. *C.F. & I. Steel Corp. v. Pete Sublett and Co., supra.* Mengden failed to get a

favorable finding by the jury on the issue of duress. The jury was entitled to consider that the note had been in default for more than 60 days when appellee paid the full amount demanded, that he made no written protest and took no legal action to contest the foreclosure or the reasonableness of the amount demanded before he paid same. As an appropriate remedy, Mengden could have sought an injunction. *Lee v. Howard Broadcasting Corp.*, 305 S.W.2d 629 (Tex.Civ.App.—Houston 1957, no writ). He could have tendered the full amount demanded into the registry of the court and immediately filed suit contesting the reasonableness of the demanded amount. He did neither. The jury failed to find that the payment was made under duress; in our opinion that finding is not contrary to the great weight and preponderance of the evidence. Furthermore, appellee did not move for the trial court to disregard that finding as required by Rule 301 of the Texas Rules of Civil Procedure. The trial court is not empowered to disregard a jury finding on its own initiative in the absence of a proper motion and notice. *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866 (Tex.Civ.App.—San Antonio 1980, no writ); *Derbonne v. Derbonne*, 555 S.W.2d 507 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dism'd).

We will next consider whether appellee made a voluntary or an involuntary payment. In their analysis of this case appellants argue that a payment is voluntary as a matter of law unless duress is established. Appellants cite *West Texas State Bank v. Tri-Service Drilling Co.*, 339 S.W.2d 249, and *Edwards v. Williams*, 93 S.W.2d 452 (Tex.Civ.App.—Amarillo 1936, no writ), to support the proposition that when a person acquiesces to demand for payment instead of taking the protection or remedy the law furnishes, such payment is deemed to be voluntary. We do not agree that those

authorities support such a proposition. Unlike the case before us, *Edwards* falls in that class of cases in which the party making demand cannot enforce the demand without resort to the courts and, therefore, does not control the instant case. *West Texas State Bank v. Tri-Service Drilling Co.* holds that what constitutes a voluntary payment depends on whether the facts in a particular case indicate an intention on the part of the payor to waive his rights. It has been held that a payment made with an express reservation of the right to bring suit for recovery is not a voluntary payment. *West Texas State Bank v. Tri-Service Drilling Co.*, 339 S.W.2d 249; *Lobit v. Marcoulides*, 225 S.W. 757 (Tex.Civ.App.—Galveston 1920, writ ref'd).

In *Lobit v. Marcoulides* the party demanding payment had the power to enforce the demand without resort to the courts, and the payor was allowed to recover. The Court of Civil Appeals noted that there was no doubt of the right to seek recovery because the written receipt for payment recited that the amount was paid under protest [1] "without prejudice to their right, if any, to bring suit therefor." The appellate court observed that that expression negated any assertion that the payment was made voluntarily.

In *West Texas State Bank v. Tri-Service Drilling Co.*, as here, the jury found that the obligor never intended by making payments to waive its claim. The cause of action involved offsetting claims arising out of the same transaction; the obligor was never in default on the note involved but at all times contended that the payee was indebted to the obligor and prior to payment made written demands for payment of the offsetting amount. In those circumstances the Court of Civil Appeals declined to hold as a matter of law that the obligor was seeking recovery of a voluntary payment and held

1. Payment under protest is not sufficient to allow recovery of voluntary payments in absence of fraud, duress, or compulsion when the demanding party must resort to the courts to enforce the demand or when the payor has failed to assert the defense of duress in a prior lawsuit. *Edwards v. Williams*, 93 S.W.2d 452; *Stanford v. United States Inv. Corp., Ltd.*, 272 S.W. 568; *Ladd v. The Southern Cotton Press & Mfg. Co.*, 53 Tex. 172 (Tex.Civ.App.—Galveston 1880).

that the evidence supported a jury finding that obligor did not, by making payments, intend to waive its claim.

As previously stated, the general rule is that money voluntarily paid with full knowledge of all the facts cannot be recovered. The rationale for this rule is stated in *R. G. McClung Cotton Co. v. Cotton Concentration Co.,* 479 S.W.2d 733 (Tex.Civ.App.— Dallas 1972, writ ref'd n.r.e.):

> . . . a party who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back. Neither should he be allowed to avoid the inconvenience of immediate litigation by paying a claim and reserve to himself the privilege of suing for the money at a time and under circumstances of his own choosing, when his adversary may be at a disadvantage because of unavailability of records and witnesses. (cites omitted.)
>
> *However, the rule against recovery of voluntary payments is not applied rigidly in cases where the reasons for the rule do not exist. In some cases the payor is allowed to recover the money if he clearly never intended to surrender his position.*

*Id.,* citing *West Texas State Bank v. Tri-Service Drilling Co.* (emphasis added).

 We hold that a plaintiff seeking to recover allegedly unreasonable attorneys' fees paid to one who can enforce a demand for payment pursuant to the terms of a promissory note without resort to the courts must plead and prove (1) that the payment was made involuntarily or that he did not, by making the payment, intend to waive his claim of unreasonableness, (2) that the amount of attorneys' fees paid was unreasonable, and (3) what amount of attorneys' fees was reasonable in the circumstances. Only if plaintiff does not succeed in proving involuntary payment or lack of intent to waive must he plead and prove duress, fraud or compulsion in order to recover.

The record reveals that Winters told Mengden's attorney that he had a buyer for the property and that he would proceed with the pending foreclosure sale unless the amount demanded was paid in full. In our opinion that raises a fact question on the issue of whether payment was made involuntarily.

 Appellee Mengden, plaintiff in the court below, did not request that a special issue be submitted on the question of involuntariness. Appellants did request such an issue and incorporated in it a definition of voluntariness which required "in order to find that an act is not voluntary, [the jury] must find that it was produced by duress" and included the elements of duress. The court properly refused to submit said issue as it was defined. The trial court did submit Special Issue No. 3 as follows:

> Do you find from a preponderance of the evidence that plaintiff, Walter H. Mengden, Sr., waived any claim that the sum of $61,438.58 was not a reasonable attorney's fee?
>
> By the term "waived" as used herein is meant the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and the intention to release it.

Although the issue is expressed in terms of waiver, it is substantially equivalent to an issue on voluntariness of payment as expressed in *West Texas State Bank v. Tri-Service Drilling Co.* However, couched as it is in terms of waiver, a better definition would include "the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Mass. Bonding & Insurance Co. v. Orkin Extermination, Inc.,* 416 S.W.2d 396 (Tex. 1967). Special Issue No. 3, as submitted, placed the burden of proof on the bank. Ordinarily waiver is an affirmative defense and the burden of proof is on the party claiming it. However, in the instant case the burden should have been placed on Mengden to prove that he made the payment involuntarily or that he did not, by making the payment, intend to waive his claim that the demand for payment of the

full 10% attorneys' fee was unreasonable. The jury answered "We do not" to Special Issue No. 3. This answer constitutes a failure to find that Mengden had waived his claim, but it does not amount to a finding that Mengden had *not* waived his claim or had paid *in*voluntarily. Therefore, the jury's answer to Special Issue No. 3 will not support the judgment. For this reason and because the jury also failed to find duress, we must reverse; however, in the interest of justice we remand the case to the trial court for a new trial.

Appellants also challenge the sufficiency of the evidence on the issue of reasonableness of the attorneys' fee. The record reflects conflicting testimony in this regard and contains ample evidence to support the jury's finding on that issue.

Appellants' final point of error complains of the trial court's refusal to allow appellants to fully offer in the presence and hearing of the jury Mengden's deposition testimony. The excluded portions are set forth and preserved for review in appellants' Bill of Exceptions. At the time of trial Mengden was 78 years old. He had had a stroke after his deposition was taken. His trial testimony reflects weariness, physical impairment and a dim memory. In contrast, his deposition testimony is sharp, vigorous, and somewhat antagonistic. The Bill of Exceptions reveals that the excluded portion of Mengden's deposition includes additional testimony in regard to the lack of protest at the time payment was made. Deposition testimony may be read in evidence at trial without the necessity of showing that a witness is unable to testify. Tex.R.Civ.P. 213; *Carpenter v. Tinney*, 420 S.W.2d 241, 246 (Tex.Civ.App.—Austin 1967, no writ). It is well settled that the deposition of a witness present at trial may be read. *Mitchell v. Houston Pipe Line Co.*, 219 S.W.2d 109, 115 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.). It was critical to appellants' case to demonstrate appellee's earlier attitude and testimony. In our opinion the exclusion of that deposition testimony was reversible error.

In light of our disposition of this appeal we find it unnecessary to discuss the remaining points of error. We reverse and remand.