Reversed and Remanded and Opinion filed _____, 2003









Reversed and Remanded and
Opinion filed August 28, 2003.

 

 

                        

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00387-CV

____________

 

HOWELL PIPELINE TEXAS, INC., Appellant/Cross-Appellee

 

V.

 

EXXONMOBIL PIPELINE COMPANY, Appellee/Cross-Appellant

 

V.

 

HOWELL CORPORATION, HOWELL PIPELINE USA, INC., HOWELL
CRUDE OIL COMPANY, Cross-Appellees

 

 



On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 99-32526

 

 



O P I N I O N

            This
suit concerns leftovers of a $63 million sale by Exxon[1] to
Howell[2] of
pipeline systems spread across four states. 
As a part of the sale, Exxon leased back eight oil storage tanks in
northwest Houston.  When Exxon terminated
the lease a year later, it left behind substantial amounts of crude oil and “tank
bottoms”—sediments that accumulate in the location indicated by their
name.  

            Howell
sued for rent, claiming Exxon was a holdover tenant because of the crude oil it
left behind.  Both parties claimed the
other should have paid the $1.6 million cost to clean out the tank bottoms left
behind.  Based on a jury’s answers, the
trial court awarded neither party anything, from which decision both appeal.  

Rent

            The
jury found Exxon vacated the storage tanks in October 1996—more than six months
after termination—but that Exxon did not breach the lease between the
parties.  The jury also found (1) Exxon’s
failure to pay rent after March 31, 1996 was excused by Howell’s repudiation or
prior breach, (2) Exxon’s continued occupancy of the leased premises after
March 31, 1996 was justified by circumstances beyond its control, and (3) Howell’s
claim for rental payments fell within a release clause in the parties’ sales
agreement.  At trial, Exxon tendered the
release, as well as evidence that it left crude oil in the tanks because (1)
without it “the roofs would land on the tanks,” (2) Howell refused to cooperate
with Exxon’s efforts to remove it, and (3) Howell would need it to clean out
the tank bottoms.  Although Howell
disputed these claims at trial, on appeal it does not attack the legal or
factual sufficiency supporting any of the jury’s findings.  

            Instead,
Howell asserts Exxon was a holdover tenant, and thus had an absolute obligation
to pay rent that could not be justified, excused, or released.  Generally, the duty to pay rent is independent
of other covenants in a lease because a tenant in possession retains the
primary right to which he is entitled—possession.[3]  But there was some evidence here that Exxon
was not in possession of the premises, as it could not remove the crude
oil without Howell’s cooperation.[4]  And there was also evidence the holdover was
at Howell’s request and for its benefit, a matter which the parties were free
to negotiate.[5]  Other than the general proposition making
rent an independent covenant, Howell presents no authority supporting an
absolute duty to pay rent under circumstances like those here.  

            Additionally,
in the parties’ Purchase and Sale Agreement, Howell agreed to release Exxon for
all claims asserted against it “by any person or entity arising . . . from
incidents occurring after closing relating to the condition of the assets.”  Howell argues the release was intended to
cover claims by third parties only (and not Howell), but this contradicts the
express coverage of claims by any person or entity.  Howell argues the release could not have
covered future events, an argument belied by the express coverage of claims
arising after closing.  Finally,
Howell again argues the release did not cover its claim for rent.  But as noted above, Exxon presented evidence that
it could not or did not remove the crude oil due to the condition of the assets
(here, the tanks).

            In
the circumstances presented here, Howell was not entitled to rent regardless of
its own breaches or agreements.  We hold the
trial judge did not err in asking the jury whether Exxon’s duty to pay rent was
justified, excused, or released, or in entering a take-nothing judgment based
on their answers.

Tank Bottoms

            The
jury found Howell breached the lease by refusing to pay for clean-up of the
tank bottoms, but also found Exxon suffered no damages from Howell’s
breach.  Howell appeals the former
finding, Exxon the latter.  

            The
parties presented conflicting expert testimony on whether the clean-up costs
should be borne by the owner of the tanks (Howell) or the owner of the contents
(Exxon).  Although nothing in the
parties’ agreements answers this question directly, Exxon points to several
provisions that support its interpretation:

·       
The
Purchase and Sale Agreement provided that Exxon sold the tanks to Howell “ON AN
AS-IS, WHERE-IS AND WITH ALL FAULTS BASIS” (capitalization in original).  This does not suggest the parties intended for
Exxon to clean out the tanks after the sale.

·       
The
Purchase and Sale Agreement excluded from the sale all crude oil in the various
pipeline assets belonging to shippers (including Exxon affiliates).  An attachment provided an elaborate
calculation for this crude oil inventory that excluded tank bottoms.  By excluding crude oil from the sale, but
also excluding tank bottoms from the calculation of crude oil, this provision
suggests the tank bottoms were sold with the tanks.

·       
The
Lease Agreement for the tanks specifically provided Exxon would return them at
termination “in the same condition as when received,” presumably including tank
bottoms.[6]  

            At
the least, these contractual provisions do not unambiguously place the duty of
clean-up on Exxon.  We need not decide
whether they unambiguously place the duty on Howell; even assuming they are ambiguous,
they provide some evidence to support the jury’s verdict that Howell had that
duty, and breached it by failing to pay the full cost.

             In its appeal, Exxon challenges the jury’s
finding that it suffered no damages from Howell’s breach.  Damages were defined as costs incurred in
cleaning up the tank bottoms.  Based on
the undisputed evidence presented at trial, the jury’s finding cannot possibly
be true—there is simply no evidence that clean-up was free.  Howell and Exxon each paid $799,236.09 in
clean-up costs, and each sued the other for the same reimbursement amount.  Accordingly, neither party challenged the
reasonableness or necessity of that amount. 
While it is generally within the province of jurors to set damages, they
cannot ignore the undisputed facts and arbitrarily deny any recovery.[7]

            Howell’s
only argument in support of the jury verdict is that Exxon paid voluntarily,
and thus waived any right to reimbursement.[8]  But the clean-up only began when, after an initial
impasse, Exxon and Howell signed an agreement to split the clean-up costs that
contained the following proviso:

This agreement
to share costs and perform the tank cleaning is being done to minimize the
impact on the surrounding community and is not to be taken or used by either
party as an admission by the other party of any responsibility for the tank
bottoms or a waiver of any legal rights. 
Howell and [Exxon] will each reserve its legal rights to claim or
counterclaim for the amounts expended in the cleanup and any other amounts
rightfully owed by one party to the other.

This language is not ambiguous—Exxon
waived nothing by agreeing to split the clean-up costs until the parties’
rights were settled in court.[9]  Thus, the evidence establishes as a matter of
law that Exxon incurred $799,236.09 in actual damages.[10]

            Exxon
also asserts that it conclusively proved it was entitled to $303,506 in
attorney’s fees for Howell’s breach. 
Exxon’s expert testified regarding the billing rate and attorneys
involved, the nature of the services rendered, and the reasonableness of the
fees charged.  Howell did not controvert
Exxon’s evidence, and its only response on appeal is the jury’s zero-damage
award.  Because the evidence was clear,
direct and positive, and not contradicted by any other witness or attendant
circumstances, we hold Exxon is entitled to attorney’s fees in the amount of
$303,506.[11]

Jury Argument

            In
its final issue, Howell asserts the trial court erred by denying its motion for
new trial based on jury argument by Exxon’s counsel.  The record reflects several occasions during
closing arguments when both of Exxon’s attorneys inserted their personal
beliefs regarding the credibility of the witnesses.  Even if these statements were improper, Howell
objected only once, never got a ruling on that objection, and never asked for
an instruction to disregard the argument. 


            Incurable
argument (for which no request for an instruction is required) is rare,
typically only involving inflammatory statements.[12]  The difference between the argument “witness
A was not credible” and “I believe witness A was not credible” is a
narrow one that cannot be described as inflammatory.  Accordingly, we overrule Howell’s third
issue.

            In
sum, we affirm the trial court’s take-nothing judgment against Howell.  We reverse the trial court’s take-nothing
judgment against Exxon, and hold that Exxon is entitled to judgment against
Howell Pipeline Texas, Inc. for $799,236.09 in actual damages, attorney’s fees
of $303,506, costs, and interest.  The
record in this case does not allow this Court to determine prejudgment interest
as a matter of law; thus, we reverse the trial court’s judgment and remand this
case to the trial court for rendition of judgment consistent with this opinion.[13]                                           

 

 

 

                                                                                    

                                                                        /s/        Scott Brister

                                                                                    Chief
Justice

 

 

Judgment
rendered and Opinion filed August 28, 2003.

Panel consists
of Chief Justice Brister and Justices Yates and Hudson.

 

 

 

 











[1]  The seller of the pipeline systems was Exxon
Pipeline Company, whose successor after a corporate reorganization was
ExxonMobil Pipeline Company. Because no issue turns on the reorganization, for
ease of reference both are referred to herein as “Exxon.”





[2]  The buyer of the pipeline systems was Howell
Crude Oil Company.  After an ownership
transfer among its affiliates, the tanks were leased back to Exxon by Howell
Pipeline Texas, Inc.  Because no issue
turns on the transfer among the Howell entities, for ease of reference all are
referred to herein as “Howell.”





[3]  See Davidow v. Inwood North Professional
Group, 747 S.W.2d 373, 375 (Tex. 1988).





[4]  See Restatement
(Second) of Property §10.01, cmt. e (providing tenant does not holdover
if property left behind does not substantially interfere with landlord’s
retaking possession). 





[5]  Cf. Churchill Forge, Inc. v. Brown, 61
S.W.3d 368, 371 (Tex. 2001) (refusing to infer prohibition against parties’
agreement given State’s “strong commitment to the principle of contractual
freedom”).





[6]  While Howell asserts that the tank bottoms
increased during the term of the lease, the jury found Exxon did not breach the
lease between the parties, and Howell has not challenged this jury finding on
appeal.





[7]  See Schwartz v. Pinnacle Communications,
944 S.W.2d 427, 436 (Tex. App.—Houston [14th Dist.] 1997, no writ).





[8]  Howell also argues Exxon waived error by
moving for entry of judgment on the jury’s verdict.  See Litton Indus. Prods., Inc. v. Gammage,
668 S.W.2d 319, 321–22 (Tex. 1984).  But
before the hearing was held, Exxon filed a motion for judgment notwithstanding
the verdict challenging the jury’s zero-damage finding.  Accordingly, Exxon did not waive error.
See Baw v. Baw, 949 S.W.2d 764, 767 (Tex.App.—Dallas 1997, no pet.)
(holding husband who signed decree stating “approved and consented to as to
both form and substance” did not waive appeal because he later indicated during
hearing that he did not consent to it).





[9]  See Spring Branch Bank v. Mengden, 628
S.W.2d 130, 136 (Tex. App.—Houston [14th Dist.] 1981, writ ref’d n.r.e.)
(stating that a payment made with an express reservation of rights to bring
suit is not a voluntary payment).  





[10]  See Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 882 (Tex. 1990) (affirming part of court of appeals judgment
that awarded actual damages as a matter of law because evidence of these
damages was uncontroverted).





[11] Id.
at 881 (holding that, if the evidence is clear, direct and positive, and not
contradicted by any other witness or attendant circumstances, an appellate
court can render judgment as to the uncontroverted amount of attorney’s fees).





[12]  See Melendez v. Exxon Corp., 998
S.W.2d 266, 281 (Tex. App.—Houston [14th Dist.] 1999, no pet.).





[13]  See Buys v. Buys, 924 S.W.2d 369, 375
(Tex. 1996).